■ In the Matter of the COMMISSIONER OF SOCIAL SERVICES, on Behalf of DEBRA TALAVERA, as Assignee, Respondent, v RALPH MARTINEZ, Appellant. — Order, Family Court, Bronx County (Shirley Wohl Kram, J.), entered March 15, 1982, which adjudged and declared respondent to be the father in this paternity proceeding, reversed, on the law and the facts, without costs or disbursements, and the petition dismissed. This proceeding, brought to establish filiation, poses a classic case involving a weighing of the evidence and the credibility of the witnesses to determine whether the proof adduced met the requisite standard of "clear and convincing evidence" necessary to establish paternity. The testimony of the two interested parties is in sharp conflict. According to the mother, she was introduced to respondent in 1978 by her sister at the Bronx Steak House, where she alleges he worked. She claims to have first had sexual relations with him in August, 1979, and, thereafter, at least two or three times per week, during which time she did not date or have relations with anyone else. She terminated relations with respondent in December, 1979, when she was four months' pregnant, and, after the child was born, had intercourse with respondent only once. She also contends that respondent acknowledged paternity in the presence of an undisclosed friend, before whom respondent had admitted that the child was his and "he was going to make me another one." Neither the sister nor the unnamed friend appeared at trial to testify on behalf of the mother. In contrast to the testimony of the mother, respondent stated that he met the mother at the Smokey Fish Bar, not by a social introduction, but by a "pick-up." He denied having worked either there or at the Bronx Steak House. While he candidly admitted to having had intercourse, according to respondent, he had relations on but one occasion and denied any continuing social or sexual relationship. Although respondent could not remember the date of the one sexual encounter, he recalled that it had occurred during the summer and about three weeks thereafter she told him that she was pregnant. He denied having had any relations with her after the child was born, declaring, "[n]o, never after that once." The child was born on June 17, 1980. The results of two blood tests were also introduced at the hearing but both proved to be inconclusive as a result of "poor quality results." While the Family Court failed to make requisite findings of fact upon which the order of filiation was based, the record before us is sufficient to permit us to make our own findings of fact and conclusions of law (see *Matter of Jose L. I.,* 46 NY2d 1024; *Matter of Espin v Pierce,* 85 AD2d 503; cf. *Matter of Sunshine A.Y.,* 88 AD2d 662). Accordingly, notwithstanding the failure of the Family Court Judge to set forth specific findings, we need not remand the matter since our own examination of the record reveals that the evidence is insufficient to establish paternity by clear and convincing evidence. The petitioner in this proceeding had the burden of establishing respondent's paternity by clear and convincing evidence (*Matter of Lopez v Sanchez,* 34 NY2d 662; *Matter of*

*Seeberg v Davis,* 84 AD2d 262; *Matter of Espin v Pierce, supra; Matter of Commissioner of Welfare of City of N. Y. v Wendtland,* 25 AD2d 640). Unlike both *Matter of Espin (supra)* and *Matter of Seeberg (supra),* where there were admissions of an ongoing relationship between the parties, here, there was a sharp conflict in the evidence as to the extent and existence of any continuing relationship. Both qualitatively and quantitatively, the proof offered by petitioner contains critical gaps. The paucity of the proof offered to establish paternity is compounded by the inconclusive blood test results. As we observed in *Matter of Seeberg* (84 AD2d, at p 263). "Normally, the determination as to paternity rests basically on a resolution of credibility; accordingly, a finding of a trial court, sitting without a jury, is accorded great weight * * * However, where the evidence in a particular case compels a different conclusion, the Appellate Division will not hesitate to reverse a determination of a trial court sitting without a jury." Taking into account the testimony by the mother as to an ongoing relationship with respondent, and her claim that he had admitted paternity to an unnamed friend, such an account could have been corroborated by the testimony of the sister, the unnamed friend or other relevant proof in the form of gifts, souvenirs or photos (cf. *Matter of Espin v Pierce, supra*). The failure to call these witnesses or present some other evidence which would have been supportive of the account offered by the mother permits the finder of the facts to construe the evidence in the case most strongly against the mother and to draw the strongest of inferences against that party which the opposing evidence in the record permits (*Noce v Kaufman,* 2 NY2d 347, 353; *Marine Midland Bank v Russo Produce Co.,* 50 NY2d 31, 42; *Milio v Railway Motor Trucking Co.,* 257 App Div 640; *Perlman v Shanck,* 192 App Div 179). Such proof here would have been supportive of the factual account offered by the mother and, under the circumstances, the failure to call these witnesses warrants our drawing such an inference. The sharp disputes of fact, including, *inter alia,* the mother claiming an ongoing relationship and an admission of paternity, both denied by respondent, who acknowledged only one encounter, combined with the inconclusive blood test results and the failure of petitioner to offer available corroborating proof, lead us to the conclusion that petitioner failed to establish paternity under the requisite standard of clear and convincing evidence. Accordingly, the order of filiation should be reversed and the paternity petition dismissed. Concur — Murphy, P. J., Silverman and Kassal, JJ.

Bloom and Milonas, JJ., dissent in a memorandum by Bloom, J., as follows: This filiation proceeding was brought by the Commissioner of Social Services on behalf of Delilah Talavera, the child of Debra Talavera against the putative father, Ralph Martinez. Such action is authorized "if the mother or child is or is likely to become a public charge" (Family Ct Act, § 522). The mother and the putative father were the sole witnesses. The mother testified to sexual relations with the putative father over a period exceeding two years. During this period she did not date or have intercourse with anyone else. The putative father testified that he had sexual intercourse with Debra on one occasion only, within the critical period. While there are other variances in their testimony, most notably, the bar at which they met, the circumstances of the meeting, they both testified to frequenting the same bars. Additionally, Debra fixed the place of sexual intimacy at Ralph's apartment. Although she was unable to specify the apartment number, she correctly fixed the address and location of the apartment in the building. She also described the layout of the apartment. We do not dispute that there are some bothersome aspects to the proof. Key among them is the fact that although two blood tests had been taken, they were not offered in evidence because they yielded "poor quality results" and were, therefore, inconclusive. Additionally, Debra testified to a

conversation had by Ralph with a friend of hers in her presence in which Ralph told Debra's friend that "he was going to make me another one". The failure to produce the friend to corroborate that testimony can be ascribed only to the fact that the case was tried by a member of the staff of the Corporation Counsel who had probably seen Debra for the first time that day and who was unable to prepare the matter as thoroughly as private counsel might have. However, this absence of proof, while it does not strengthen petitioner's case, does nothing to disprove it. Concededly, the burden of proof cast upon petitioner required clear and convincing evidence of paternity (*Matter of Lopez v Sanchez,* 34 NY2d 662, 663; *Matter of Seeberg v Davis,* 84 AD2d 262, 263). It is hornbook law that the weight to be accorded the evidence is not dependent on the number of witnesses but upon the credibility of those witnesses. The Trial Judge had the opportunity to observe the witnesses as they testified and to evaluate their demeanor and forthrightness, elements not easily ascertainable on a cold record. She concluded that Debra was telling the truth. Based on that conclusion she determined that petitioner had established its case by clear and convincing evidence. That result should not lightly be interfered with by us. On the entire record I would affirm the determination that Ralph is the natural father of Delilah. Accordingly, I would remand the proceeding to the Family Court for the purposes of determining the amount of support to which Delilah may be entitled (Family Ct Act, § 545) and fixing respondent's right of visitation, should any be requested (Family Ct Act, § 549).